IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PANHANDLE CLEANING &
RESTORATION, INC.,

       Plaintiff,

v.                                   Civil Action No. 5:11CV178
                                                      (STAMP)
RONALD W. VANNEST,
CHARLES W. WYCKOFF
and SHAHN GOLEC,

       Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.  Procedural History

Panhandle Cleaning & Restoration, Inc. ("Panhandle") filed this civil action in the Circuit Court of Ohio County, West Virginia against defendants, Ronald W. Vannest ("Vannest"), Charles W. Wyckoff ("Wyckoff") and Shahn Golec ("Golec"), which action was then removed to this Court. The suit alleged that Panhandle is engaged in the business of providing contracting services for the construction, restoration and remodeling of residential and commercial structures and that the three defendants entered into a written agreement with Panhandle.[1] Plaintiff Panhandle alleged that defendant Golec entered into a written agreement with Panhandle to be employed generally as a construction

---

[1] Since the plaintiff thereafter settled with defendants Vannest and Wyckoff on all claims and Panhandle settled its suit for monetary damages with Golec, this case was tried before this Court on the sole issue of a request for a permanent injunction proceeding only against defendant Golec.

superintendent/designer under a written agreement attached to the complaint as Exhibit C. The agreement which Panhandle alleges that it entered into with Golec contains what is known as a non-competition and non-solicitation covenant as set forth in paragraph 7 which is quoted verbatim in Finding of Fact No. 27 below. Panhandle alleges that Golec has violated the non-competition provision under paragraph 7 by impermissibly contacting and/or otherwise interacting with clients of Panhandle with the intent to perform work that is directly in competition with the services provided by Panhandle and by soliciting current employees to leave their employment with Panhandle to begin work with defendant's business, all of which violates the non-competition and non-solicitation covenant contained in paragraph 7 of the alleged employment contract with Golec. Panhandle further alleged that it has suffered immediate and irreparable harm for which there is no adequate remedy at law. Consequently, plaintiff sought injunctive relief for the breach of contract as well as damages for the breach of contract.[2] Defendants filed a counterclaim against Panhandle. Following discovery, all parties filed motions for summary judgment. Panhandle filed a motion for partial summary judgment. In that motion, plaintiff argued that the non-competition and non-solicitation covenants are valid and enforceable because they are

---

[2]At no time in this civil action did Panhandle seek a preliminary injunction under Federal Rule of Civil Procedure 65.

limited in scope and geography. Panhandle did not argue at that time that this Court should find that Golec violated these covenants but instead stated that this question should be left for the jury to determine at trial. Defendant Golec responded to plaintiff's motion by alleging that he did not sign the employment agreement and, thus, the covenants did not apply to him. Further, Golec claimed that the covenants are generally not enforceable because Panhandle has no specific business interest it is seeking to protect and the covenant is too broad in both scope and geography. Defendant Golec filed a motion for summary judgment arguing that he did not breach the employment agreement. Alternatively, Golec asserted that even if he did breach the employment agreement, there was no evidence of any monetary loss. This Court found that genuine issues of material fact exist as to whether Golec did sign the employment agreement. Also, this Court found that further inquiry needed to be made into exactly what Panhandle's business is and, thus, what type of work constitutes being in direct competition with Panhandle. However, this Court, in stating the procedure to follow in determining whether a restrictive covenant is reasonable, found that the restrictive covenant in the alleged contract with Golec is at least valid and enforceable as to time -- two years -- and geography -- fifty miles. The covenant places a two-year, fifty-mile restriction on an employee after leaving Panhandle's employment. This Court found

that this restriction is not excessively broad under West Virginia case law.  Therefore, this Court granted in part Panhandle's motion for partial summary judgment and denied defendant Golec's motion for summary judgment.  Following the summary judgment rulings, this Court scheduled a non-jury trial on the issue of the requested injunction and scheduled a jury trial on the question of damages following the bench trial.  As noted above, having been advised during the summary judgment process that Panhandle had settled its claims against defendant Vannest and Wyckoff, this Court in its memorandum opinion and order dealing with the summary judgment motion dismissed all claims against Vannest and Wyckoff.  ECF No. 55.

Further, by stipulation approved by this Court, the parties agreed to permit Panhandle to amend its complaint to remove the previous Count II, a breach of contract (damages) claim.  ECF Nos. 71 and 72.  Finally, following the injunction bench trial, the parties stipulated to a dismissal of defendant Golec's counterclaim against Panhandle and, therefore, only the sole count for permanent injunctive relief remained pending.

With the elimination of the jury trial on the damages claim (previous Count II), the Court conducted a non-jury hearing on the request for an injunction by Panhandle against Golec, following which counsel for Panhandle and Golec submitted written closing arguments.

4

Based upon this Court's review of the evidence at the hearing on the injunction claim and upon resolution of factual disputes after giving due consideration to both the credibility of the witnesses and the various documents admitted as exhibits as well as those previously filed in this civil action, this Court pursuant to Federal Rule of Civil Procedure 52(a) hereby makes the following findings of fact and conclusions of law and finds that plaintiff Panhandle Cleaning & Restoration, Inc. is entitled to injunctive relief against defendant Shahn Golec in the manner set forth below.

## II.  Findings of Fact

1. At the one-day, non-jury trial on the permanent injunction issue, four witnesses testified: Robert C. Contraguerro, Jr., Thomas M. Contraguerro, Bruce Cionni and Shahn Golec.

2. Robert C. Contraguerro, Jr. ("Contraguerro, Jr.") is the vice president of Panhandle and the part owner of Panhandle along with his father, Robert Contraguerro, Sr. ("Contraguerro, Sr."). Contraguerro, Jr. manages the estimating sales force and oversees the operations of Panhandle.

3. Panhandle started in 1977 as a carpet cleaning company and then expanded to other services, including restoration following fires. Panhandle's business then moved into the field of reconstruction, remodeling, and new construction which included kitchens, bathrooms, basements, room additions and even the construction of new homes.

4. Panhandle advertises its business extensively through various forms of traditional media and most recently through a website and facebook.

5. At the time of the hearing, Panhandle had three homes under construction "from ground up."

6. Panhandle, through its construction expansion and the opening of a division in that area, became interested in defendant Golec through its knowledge of his experience in construction design. Panhandle, therefore, hired Golec to manage its construction division.

7. Panhandle, by that time a fairly large company, had the ability to create a showroom and to establish vendor relationships, including exclusive relationships with certain kitchen cabinet manufacturers. Panhandle also had substantial personnel to manage its accounting system and software. Golec, in Panhandle's estimation, had the skill to perform the work as well as to make purchases in order to market a particular job.

8. In its work, Panhandle obtained written employment agreements with certain but not all of its employees. So-called "field employees" such as hourly laborers, truck drivers, and carpenters did not have written employment agreements. However, Panhandle did require written agreements with certain "management personnel" such as members of its sales and marketing force,

project managers and other individuals having access to company business data, fee schedules and similar special information.

9. Such employment agreements with management personnel specifically also set forth specific salaries, benefits, commissions and other compensation.

10. These employment agreements benefitted both Panhandle and the employee by setting forth to a particular employee what Panhandle would provide to an employee and what Panhandle expected of that employee.

11. Written agreements for certain management employees contained non-competition clauses protecting Panhandle in certain ways when an employee left Panhandle's employment by preventing the employee from competing directly or indirectly with Panhandle and from using certain vendor and customer lists to the detriment of Panhandle as well as prohibiting a departing employee from soliciting Panhandle's existing employees to leave Panhandle to work for the departing employee.

12. Contraguerro, Jr. testified that Panhandle entered into such an employment agreement with defendant Golec because he was managing a division of Panhandle. Any such employee would be required to enter into a written employment agreement which would protect Panhandle from an employee upon his or her leaving the company from soliciting other Panhandle employees, from using information on customer and vendor lists, from obtaining trade

secrets, from using information about pricing, software programs and from using similar specific information.

13. Golec (or any similar employee) could use Panhandle's information concerning particular pricing levels to compete with Panhandle by undercutting Panhandle's price on a job.

14. Golec had access to particular customer lists which contained contact information, including address and telephone numbers (including cell phone numbers). This access would provide Golec with information that he could use to his benefit (upon leaving Panhandle) and, therefore, to Panhandle's disadvantage and detriment.

15. Golec's use of the above and other protected information as a general contractor upon leaving Panhandle's employment would be considered competing with Panhandle under the terms of the employment agreement.

16. Panhandle invested over half a million dollars in its showrooms regarding new construction services which is only one portion of its business.

17. Golec's experience lay in new construction design. He brought to Panhandle a computer design program known as "20-20", which program Panhandle had not previously possessed.

18. Panhandle advertises as a general contractor, one of about thirty listed in the Wheeling and vicinity Yellow Pages.

Contraguerro, Jr. stated that the construction business in that geographic area is a "pretty competitive business."

19. Thomas M. Contraguerro ("T. Contraguerro") is vice president of operations at Panhandle and, as such, deals with human resources topics at that company, including hiring and firing of employees, screening employment applicants and performing background checks.

20. T. Contraguerro testified that all of Panhandle's office employees have written employment agreements which are standard with any changes usually being made only as to name, address, compensation and insurance information.

21. T. Contraguerro testified that Panhandle had a written employment agreement with defendant Golec. This agreement dated January 22, 2010 was admitted as plaintiff Panhandle's Exhibit No. 1. Pl.'s Compl. Ex. C.

22. T. Contraguerro testified that the agreement contains Golec's signature. He recognized Golec's signature on this agreement from his signature on other documents.

23. T. Contraguerro stated at the injunction hearing that Golec was actually in T. Contraguerro's office with T. Contraguerro when Golec reviewed the employment agreement and then signed the agreement.

24. T. Contraguerro testified that, at the time of the signing, Golec asked a specific question about whether, if Golec

9

ever left his employment with Panhandle, he would be able to return to his previous employer, to which T. Contraguerro responded that under the terms of the agreement in that situation, Golec would not be able to perform the type of work he was doing for Panhandle such as new construction, including kitchen and bath design and cabinetry work. At that time, Golec then stated that he planned to be with Panhandle "for the rest of his career" and that he would have no problem signing the agreement. Golec then signed the agreement in T. Contraguerro's presence and was provided a copy of the agreement.

25. It was noted during the injunction hearing that the employment agreement (Pl.'s Ex. 1) contains a lengthy blank space at page 7 with the signatures being on a separate page 8. T. Contraguerro did not know why page 7 contained the blank space or why the separate page 8 with the signatures was placed in the agreement in that way. However, T. Contraguerro denied that Panhandle added Golec's signature to Panhandle's Exhibit No. 1 and denied that Golec did not sign the agreement.

26. T. Contraguerro testified that Golec requested no changes to the agreement and that the employment agreement is the same type of agreement that other Panhandle employees signed.

27. Paragraph 7 of the employment agreement entered as Panhandle's Exhibit No. 1 contains the following language:

> 7. Non-Competition; Reimbursement of Training/ Certification. Employee hereby agrees that for a period

of two (2) years from and after the date on which the Employee ceases to be employed with the Employer for whatever reason, Employee will not, within a radius of fifty (50) miles of the Employer's then current business address, directly or indirectly: (i) be employed by, or work as a consultant or other independent contractor, for another Employer which is either a client and/or customer of the Employer or which is in competition with the Employer; (ii) directly or indirectly, own, manage, finance, or control any person, firm, or corporation engaged in a similar line of business and in competition with the Employer; (iii) solicit the Employer's customers and clients, or (iv) directly or indirectly solicit any of the Employer's employees to leave employment with the Employer.  The Employee expressly acknowledges that this covenant is reasonable and will not prevent or impose an undue hardship or otherwise prevent the Employer from earning a livelihood during the time it is in effect.

In addition to the above, in the event that the Employer has incurred expenses in the training and/or certification of the Employee and the Employee either (i) voluntarily ceases employment with the Employer; or (ii) is terminated for misconduct by the Employer, then the Employee shall reimburse the Employer for all of the costs attributed to such training and/or certification as follows:

A.  If the termination of employment occurs within one (1) year from the completion of such training and/or certification, reimbursement shall for all such costs.

B.  If termination of employment occurs within two (2) years from such training and/or certification, reimbursement shall for two-thirds of such costs.

C.  If termination of employment occurs within three (3) years from the completion of such training and/or certification, reimbursement shall for one-third of such costs.

The Employee's reimbursement obligation hereunder shall cease upon the third anniversary of such training and/or certification.

The Employee hereby expressly authorizes the Employer to withhold all or any portion of any reimbursement obligation from any unpaid wages or other

>compensation which may be due and owing to Employee as of the date of termination of employment.
>
>Employee acknowledges and agrees that the rights of the Employer under this Agreement are of a specialized and unique character and that irreparable harm will result to the Employer if the Employee fails to perform his obligation under this Agreement. Therefore, the Employer may, in addition to any other remedies and damages available, seek an injunction in a court of competent jurisdiction to restrain any such failure or refusal by the Employee to comply with the provisions of this Agreement. The Employer shall be entitled to recover all costs incurred in the enforcement of this Agreement, including reasonable attorney's fees.

28. Defendant Golec testified at the trial that he never signed any employment agreement with Panhandle. Golec was shown a counterclaim that he and the two other defendants filed in this civil action. That counterclaim (ECF No. 6) asserted, among other things, that Golec "signed an employment agreement with Panhandle which was materially different from the EMPLOYMENT AGREEMENT attached as Exhibit C to the complaint. The employment agreement actually signed by defendant Golec did not contain a non-compete provision." At trial, Golec testified that he never signed any employment agreement and that what he stated in the counterclaim about there being another agreement with Panhandle was "a mistake." Golec stated that the signature on his answers to interrogatories filed in this case (Def.'s Ex. 1) and the signature on the employment agreement (Pl.'s Ex. 1) "are similar, but they don't appear to be the same." Golec testified that he did not remember

having a conversation with T. Contraguerro that he was planning to stay at Panhandle for the rest of his career.

29. Contraguerro, Jr. testified that Golec had "been gone from Panhandle" for "about a year," meaning that he left in or around October 2011. In a pretrial document, counsel for plaintiff stated that "[i]n or around November 2011, each of the Defendants resigned from their positions with Panhandle." Counsel for defendant Golec in a pretrial document stated: "Each of the defendants left the employment of Panhandle in 2011." Panhandle's list of exhibits filed before the then scheduled jury trial, to which there was no objection filed, includes: Exhibit No. 14: pay stubs representing payment made to Shahn Golec, dated August 26, 2011; Exhibit No. 12: employee COBRA notice to Shahn Golec, dated August 26, 2011, noting the end of employment was "voluntary," along with a certified mail receipt; and Exhibit No. 13: mail receipt and express mail label dated August 25, 2011, with a notation that it deals with "mailing information of Shahn Golec Final Paycheck."

30. T. Contraguerro testified that after Golec left his employment with Panhandle, T. Contraguerro was driving with his fiancé looking at various homes and went to one location around St. Clairsville, Ohio in an area called Barkcamp, near Barkcamp State Park. A sign in front of one construction site had the name of a company that T. Contraguerro believed to be a company operated by

Golec. T. Contraguerro called the telephone number listed on the sign and was connected with Golec's voice mail. T. Contraguerro also recognized a vehicle in front of the site as belonging to Mark Thomas, a former employee of Panhandle. The Barkcamp area, outside of St. Clairsville, Ohio, is less than fifty miles from Panhandle's Wheeling, West Virginia location.

31. T. Contraguerro stated that he returned about a week later to the construction site and took photographs (Pl.'s Ex. 2). The photographs show a new home being built and a sign indicating Custom Contractors as the builder. The photographs showed Golec standing near the sign as well as vehicles of Joby Martin and Mark Thomas, two former employees of Panhandle.

32. Golec admitted he was operating as a general contractor using the name Custom Contractors. Golec also admitted that he was building a house under that name outside of Barkcamp, starting construction there in June 2012 and that this was the first building project that he undertook after leaving his employment with Panhandle.

33. Golec testified that even while he was employed at Panhandle, he was working on "outside projects" on his own, such as kitchen remodeling and installing floor tile.

34. Bruce A. Cionni ("Cionni"), a cabinet builder at Panhandle, testified that Golec called him after Golec left employment at Panhandle to see how Cionni was doing and to tell

14

Cionni that Golec was now in "business for himself." Cionni said that Golec said he was not calling to "solicit a job or anything like that." Golec told Cionni he would be printing ads in the newspaper for employment with the company. Golec told Cionni that he had financial backing and that Golec had a few jobs lined up in the construction field. Cionni stated he and Golec were pretty good friends and that Cionni felt from the conversation with Golec that Golec was talking about the "possibility" of Cionni coming to work for Golec.

35. Any finding made by this Court which is not a finding of fact shall be deemed a conclusion of law.

### III. Conclusions of Law

1. Both parties agreed that in determining whether to grant injunctive relief in a civil action of this nature, the plaintiff must prove:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MerExchange, LLC, 547 U.S. 388, 126 S. Ct. 1837, 64 L.Ed.2 641 (2006). While the above case deals with a permanent injunction and the parties seek relief on this basis, this Court can only grant injunctive relief for the time period provided in

paragraph 7, in this case, two years from the date Golec ceased employment with Panhandle.

2. In determining the credibility of the witnesses who testified at this hearing, this Court has been guided by a number of factors, including the manner in which a witness testified, any bias that the witness may have, the character of the testimony given, and any evidence contrary to the testimony of the witness.

3. Based upon this Court's review of all of the evidence admitted or considered at the hearing and after giving consideration to the credibility of the witnesses and those documents admitted into evidence at the hearing or otherwise considered as relevant, this Court finds that plaintiff Panhandle Cleaning & Restoration, Inc. has proven by a preponderance of the evidence that defendant Shahn Golec voluntarily signed the employment agreement with Panhandle Cleaning & Restoration, Inc. (Pl.'s Ex. 1) dated the 22nd day of January, 2010, which contained the non-competition provision set forth in paragraph 7; that Golec was aware of the terms of the 2010 employment agreement, including paragraph 7; that Golec, thereafter, after leaving his employment with Panhandle breached the terms and conditions of the employment agreement including paragraph 7 by directly engaging in prohibited construction projects as a general contractor through his own contracting business and by soliciting other employees of Panhandle to leave employment with Panhandle and to work for Golec, all

within the prohibited time period of two years and within the prohibited geographic limitation of fifty miles from Panhandle's business address in Wheeling, West Virginia; and that Golec acted in competition with Panhandle during the prohibited time period and geographic location. Further, the covenant in paragraph 7 protects Panhandle's business interests as a general contractor.

4. Golec's actions in violation of paragraph 7 of his employment agreement with Panhandle have caused Panhandle to suffer irreparable injury not compensable adequately through monetary damages because of the nature of the right that is injured and that, after considering the balance of hardship between Panhandle and Golec, a remedy in equity through injunctive relief is warranted. The public interest is served by seeing to the enforcement of valid commercial agreements which include reasonable non-competition provisions, such as those contained in paragraph 7 of the January 22, 2010 employment agreement between Panhandle and Golec.

5. Defendant Golec is enjoined from further acting contrary to and in violation of the provisions of paragraph 7 of his employment agreement until August 26, 2013, which this Court determines is two years from August 26, 2011, which this Court finds is, more likely than not, the final date of Golec's employment with Panhandle, and which this Court finds as to Golec

17

to be the "date on which Employee ceases to be employed with the Employer" under the subject employment agreement.

6. Any conclusion of law by this Court which is not a conclusion of law shall be deemed a finding of fact.

7. This Court finds in favor of the plaintiff Panhandle Cleaning & Restoration, Inc. and against defendant Shahn Golec in this injunctive proceeding.

It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of these findings of fact and conclusions of law to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this injunctive matter.

DATED: April 3, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE